IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY LYNNE BAILLIE and KATHERINE ROSAS,<br><br>            Plaintiffs,<br><br>     v.<br><br>ACCOUNT RECEIVABLE MANAGEMENT OF FLORIDA, formerly known as UNITED LEGAL CORPORATION; MTE FINANCIAL SERVICES, INC.; INSTANTCASHLOANTILLPAYDAY.COM; PROCESSING SOLUTIONS, LLC; INSTANT CASH USA; FIRST EAST, INC.; FAST FUNDING THE COMPANY, INC.; RIO RESOURCES; THOMAS ASSENZIO; and JOLENE HART ASSENZIO,<br><br>            Defendants.<br>_____/ | No. C 11-00021 CW<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING AS MOOT DEFENDANT THOMAS ASSENZIO'S MOTION TO DISMISS (Docket Nos. 8 and 9) |

     Plaintiffs Amy Lynne Baillie and Katherine Rosas move to remand their action to Alameda County Superior Court.  Defendant Thomas Assenzio opposes the motion.  No other Defendant joins Mr. Assenzio's opposition or opposes Plaintiffs' motion.  Mr. Assenzio moves to dismiss Plaintiffs' complaint for lack of personal jurisdiction; briefing on his motion was suspended pending resolution of Plaintiffs' motion to remand.  Plaintiffs' motion to remand was decided on the papers.  Having considered the papers submitted by the parties, the Court GRANTS Plaintiffs' motion to remand and DENIES as moot Mr. Assenzio's motion to dismiss.

BACKGROUND

I.  Factual Allegations

The following allegations are contained in Plaintiffs' Third Amended Complaint (3AC), which was filed in state court prior to removal.

Plaintiffs are California residents. Defendant Thomas Assenzio, who has "principal places of business" located in Colorado, "owned, controlled, managed and/or directed" Defendants MTE Financial Services, Inc.; Instant Cash USA; Rio Resources; Processing Solutions, LLC; First East Inc.; and Instantcashloantillpayday.com. 3AC ¶ 4. Plaintiffs do not allege that Mr. Assenzio had the same or a similar relationship with Defendant Fast Funding The Company, Inc., which was a "wholly owned subsidiary, sister corporation or fictitious name of" MTE Financial. Id. ¶ 16. All of these entity Defendants conducted business as consumer lenders in California. Id. ¶¶ 10-16. Defendant Jolene Hart Assenzio, who is Mr. Assenzio's wife, held an ownership interest in Processing Solutions and First East. Plaintiffs refer to the Assenzios and all of these entity Defendants as "Defendant Lenders." 3AC ¶ 18.

On or about July 7, 2006, Baillie obtained a $300.00 "payday loan," from MTE Financial, doing business as Instant Cash USA. 3AC ¶ 2 and Ex. A, at 1. A "Loan Note and Disclosure" provided the following payment terms:

> You must make one payment of $390 due on 7/14/2006, if you decline the option of renewing your loan. If renewing is accepted, you will pay the finance charge of $90 only, on 7/14/2006. You will accrue new finance charges with every renewal of your loan. On your fifth

2

> renewal and every renewal thereafter, your loan will be paid down by $50 ($100 on balances over $500). This means your account will be debited the finance charge plus $50 ($100 on balances over $500) on the due date. This will continue until your loan is paid in full.

Between July 14, 2006 and December 1, 2006, Baillie's checking account was debited eleven times on nine different dates, for an amount totaling $977.00. On or about October 15, 2006, Defendant United Legal Corporation, predecessor in interest to Defendant Account Receivable Management of Florida (ARM), was assigned Baillie's loan. On February 8, 2007, United Legal, notified Baillie that, notwithstanding her payments, $430.00 remained due on her loan. For her loan, Baillie was charged interest at a rate of 1,216.667 percent per annum, which is usurious and unconscionable under California law.

On or about June 19, 2006, Rosas obtained a $300.00 loan from Rio Resources. Between June 30, 2006 and September 22, 2006, Rio Resources debited Rosas's checking account on seven different dates, for an amount totaling $825.00. On or about November 3, 2006, Rosas obtained a $300.00 loan from Instant Cash USA; thereafter, Instant Cash USA debited her checking account for principal and interest payments for an undisclosed amount. The interest rates associated with her loans were usurious and unconscionable under California law. With respect to her November, 2006 loan, Rosas was charged interest at a rate in excess of 700 percent per annum; unlike with her June, 2006 loan, Rosas does not specify how much she paid with respect to this loan.

Plaintiffs seek to bring claims on behalf of themselves and a class, defined as, "All persons . . . who are residents of the

3

1 State of California and entered into Instant Cash Agreements with
2 Defendant Lenders . . . and may have been a recipient of a
3 collection Notice from Defendant Account Receivable Management of
4 Florida, Inc., formerly known as United Legal Corporation . . . ."
5 Plaintiffs allege that this class includes "thousands of people in
6 California."  3AC ¶ 65.

7 Plaintiffs assert claims for: (1) "usury and/or unconscionable
8 lending," against Defendant Lenders; (2) violation of California's
9 Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, et
10 seq., against Defendant Lenders; (3) violation of the UCL, against
11 Defendant ARM; (4) unjust enrichment, against Defendant Lenders and
12 Defendant ARM; and (5) an accounting, against Defendant Lenders and
13 Defendant ARM.

14 With respect to their first claim, Plaintiffs seek "a penalty
15 equal to three times the interest paid during the year immediately
16 prior to the filing" of their complaint and "to cancel all future
17 interest that Defendants claim is due."  3AC at 27:18-20.  They
18 also seek "to recover all interest paid to Defendants during the
19 two years immediately preceding the filing of" their action and to
20 recover all interest they or putative class members paid "that is
21 not otherwise allowed by law commencing with the date four years
22 immediately preceding the filing" of their action.  Id. at 27:20-
23 25.  Plaintiffs seek trebling of damages suffered by class members
24 sixty-five years or older.

25 As for their second and third claims, Plaintiffs seek to
26 enjoin Defendants from charging an interest rate in excess of the
27 legal maximum.  They also seek restitution for any unlawful, unfair

4

or fraudulent act committed by Defendants.

Finally, with regard to their fourth and fifth claims, Plaintiffs seek recovery for "all interest payments and other monies" Defendants received from them and the putative class, "commencing with the date four years immediately preceding the filing" of their action. 3AC at 28:15-21.

Plaintiffs seek attorneys' fees and costs, pursuant to California Code of Civil Procedure § 1021.5.

## II. Procedural History

Baillie initiated this action in Alameda County Superior Court on May 22, 2007. On March 9, 2009, Processing Solutions, First East and Instant Cash filed a motion to stay the action pending arbitration. The trial court denied the motion, and these Defendants appealed. On May 27, 2010, the state court of appeal affirmed the trial court's decision on the motion to stay. On June 11, 2010, these Defendants filed a petition for re-hearing before the state court of appeal, which was denied. On July 6, 2010, these Defendants filed a petition for review in the California Supreme Court, which was also denied. On October 29, 2010, the state trial court granted Baillie's motion to recover $119,775.00 for attorneys' fees incurred during the litigation of the motion to stay and the ensuing appeal.

On November 3, 2010, Baillie filed the 3AC, which named Rosas as an additional Plaintiff and the Assenzios as additional Defendants. On January 4, 2011, Mr. Assenzio removed Plaintiffs' action to federal court pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).

## LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal district court so long as the district court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a). Title 28 U.S.C. § 1447(c) provides that if, at any time before judgment, it appears that the district court lacks subject matter jurisdiction over a case previously removed from state court, the case must be remanded. On a motion to remand, the scope of the removal statute must be strictly construed. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. Courts should resolve doubts as to removability in favor of remanding the case to state court. Id.

## DISCUSSION

Under CAFA, district courts have original jurisdiction over actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). CAFA also requires that class members' claims be aggregated to determine whether the jurisdictional amount is satisfied. Id. § 1332(d)(6).

To ascertain the amount in controversy, courts look first to the complaint. Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 399 (9th Cir. 2010). However, "when the complaint does not contain any specific amount of damages sought, the party seeking removal under

6

diversity bears the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds the statutory amount." Id. at 397; see also Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 686 (9th Cir. 2006). To do so, the removing defendant may proffer "'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" Abrego Abrego, 443 F.3d at 690 (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)); see also Ruby v. State Farm Gen. Ins. Co., 2010 WL 3069333, at *2 (N.D. Cal.). Satisfying the jurisdictional amount requirement cannot be achieved through "speculation and conjecture." Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 1002 (9th Cir. 2007).

Plaintiffs assert that Mr. Assenzio, as the proponent of federal jurisdiction, has not established that the amount in controversy in their case exceeds $5,000,000. Mr. Assenzio does not proffer any evidence in support of jurisdiction, but instead extrapolates from Plaintiffs' limited allegations that the amount in controversy is at least $5,610,000. However, his assumptions and calculations are flawed.

Mr. Assenzio asserts that there are at least 2,000 putative class members, based on Plaintiffs' allegation that the class consists of "thousands" of California residents. The record, however, contains no evidence regarding how many California residents obtained loans through Defendant Lenders.[1]

---

[1] Defendants assert that Plaintiffs represented that "ARM has contacted over 1,700 California residents who were delinquent in their loans." Notice of Removal ¶ 34. Although there is no evidence of this purported admission, Plaintiffs do not dispute

7

Even if the class consisted of 2,000 individuals, Mr. Assenzio fails to show that, more likely than not, aggregating their claims would satisfy the jurisdictional amount. Plaintiffs allege injury based on amounts paid for interest allegedly charged at usurious and unconscionable rates; as noted above, they seek restitution for interest paid, "a penalty equal to three times the interest paid during the year immediately prior to the filing of Plaintiffs' complaint" and an award of treble damages with respect to all interest paid by those class members aged sixty-five years or older. However, there is no direct evidence regarding how much interest Baillie and Rosas paid, let alone how much interest each class member paid. Nor is there evidence that the terms of Plaintiffs' loans and those obtained by putative class members were the same. Notably, Baillie's loan had a 1,216.667 percent annual interest rate, whereas Rosas's second loan allegedly had an annual interest rate "in excess of 700%," 3AC ¶ 41. And even though they obtained loans for the same amount, the size and frequency of the debits from their checking accounts differed. Finally, there is no evidence concerning how many class members were aged sixty-five years or older. Nevertheless, Mr. Assenzio posits that Plaintiffs' and putative class members' payments applied only to interest and the average total payment was $901.00, which is an average of the $977.00 and $825.00 debited from Baillie's and Rosas's checking accounts respectively. These contentions lack support.

Under the terms of Baillie's loan, debits made at the time of

---

this figure.

8

the loan's "fifth renewal and every renewal thereafter" would be the sum of a finance charge and $50.00, which would be applied toward the loan's principal. 3AC, Ex. A. Baillie's loan was apparently renewed nine times, based on the nine dates her account was debited. Thus, out of the $901.00 Baillie allegedly paid, $250.00 was presumably applied toward her loan's principal, whereas $651.00 went toward interest. There is no evidence that Rosas was subjected to the same payment terms. Assuming that she was, her loan was apparently renewed seven times, based on the seven dates her account was debited. Thus, out of the $825.00 Rosas allegedly paid, $150.00 presumably applied toward her loan's principal, whereas $675.00 went toward interest.

    Mr. Assenzio then assumes that the average of the interest allegedly paid by Baillie and Rosas reflects the average paid by the putative class members. However, this assumption also lacks support. There is no evidence to suggest that, on average, each class member paid $663.00 in interest or that it is appropriate to extrapolate the average total payment of 2,000 putative class members from the payments of two individuals. As already explained, there is no evidence that putative class members' loans were subject to the same interest rate or that payments were allocated between interest and principal in the same way as Baillie's. Nor is there any evidence concerning the average loan amount or the average duration putative class members held their loans, both of which would impact the amount of interest a class member would have paid.

    Even if an award of attorneys' fees may be considered in

9

determining the amount in controversy, Mr. Assenzio cannot meet his burden because there is "no basis for estimating the claims of the individual class members." Lowdermilk, 479 F.3d at 1002.

Mr. Assenzio relies on Lewis for the proposition that, once "'the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.'"  627 F.3d at 401 (quoting Spivey v. Vertrue, Inc., 528 F.3d 982, 986 (7th Cir. 2008)).  However, because his assumptions are not well-founded, he has not plausibly explained how the stakes in this case exceed $5 million.  Indeed, in Lewis, the removing defendant established the jurisdictional amount by offering a declaration showing the amounts for the allegedly unlawful charges billed to the putative class.  Lewis, 627 F.3d at 397-98.  Here, Mr. Assenzio does proffer any evidence.

Plaintiffs' complaint does not specify the amount in controversy, and Mr. Assenzio fails to establish that it is more likely than not that the amount in controversy in this action exceeds $5 million.  Accordingly, the Court lacks subject matter jurisdiction over this action.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to remand (Docket No. 9) and DENIES as moot Mr. Assenzio's motion to dismiss (Docket No. 8).  The Clerk shall remand this action to Alameda County Superior Court and, thereafter, close the file.

Dated: 2/14/2011

CLAUDIA WILKEN
United States District Judge

10